There's only one action for a victim. All right, I think we've cleared out enough at this point. Our second case for this morning is McCann against Brady. Mr. Pasta. May it please the court, counsel. My name is Rob Pasta and I represent Senator Sam McCann and his constituent, Bruce McDaniel, the appellant in this case. Your honors, this case is about whether Senator Brady is immune from suit for violating Senator McCann and Mr. McDaniel's First Amendment rights and Fourteenth Amendment rights under the Constitution by expelling Senator McCann from the Minority Caucus and depriving him of taxpayer-funded legislative resources, which are required to be provided to all members of the Minority Caucus who serve on committees. Senator McCann and Mr. McDaniel respectfully ask this court to reverse the district court's decision for two reasons. First, because Senator Brady's actions were not legislative acts, but rather administrative acts which are not entitled to legislative immunity. And second, because Mr. McCann and Mr. McDaniel are entitled to injunctive relief in order to halt Senator Brady's constitutional violations. So let me ask you this hypothetical. I understand that Illinois law defines the people in the Majority Caucus as all of those from the majority party plus anybody else who votes for the majority leader, Senator Cullerton, if I'm not mistaken. And so the Minority Caucus is defined as anybody else. So that's one definition, and then there are a number of other Illinois statutes that actually speak of party as opposed to majority versus minority caucus. So suppose somebody from the Socialist Party has been elected to the General Assembly and that person decides not to vote for Senator Cullerton because he thinks that he's a sellout and whatever, not pure enough somehow. So doesn't vote for Senator Cullerton. And so that puts our Socialist Senator in that Minority Caucus. Is it your position that the Minority Caucus, which is probably predominantly Republican, needs to give full legislative support to my Socialist Party person? Yes, Your Honor. So that the Republicans have to share all of their legislative strategies and their bill analyses and their timetables and all the rest of that with somebody whose political views are actually quite opposed to theirs, I'm hypothesizing. They do under the current constitutional Senate rules and statutory framework. I think the important distinction here is that they're not Republican caucus resources. They're Minority Caucus resources. But they sort of are, though, I mean, that's what I said. Some of the relevant statutes speak of party, and the caucus itself is defined the way I just stated. But quite a few other things are defined in terms of party. And I guess I really have trouble seeing this as not, well, I ask the question, do we want at the Seventh Circuit to monitor the expenditures inside the Illinois House and Senate, the General Assembly and the Senate, per representative? Do we want to say, oh, you know, you didn't give enough for district work to this person, and you didn't give enough? I don't know. It seems like a very strange role to ask the courts to undertake. The only time this court would have to monitor or analyze the specific expenditures of any of the leaders in either house would be when a constitutional violation is involved. Why? I mean, your whole theory is that we should do it all the time. Where does constitutional violation come in? If it violated this statute, why wouldn't you want us to step in? The issue presented here is whether or not legislative immunity attaches, and whether or not there's a constitutional violation. With respect to other situations under which this might come up, I don't know what the cause of action would be other than perhaps statutory violation, but there's not a, other than the requirement to provide staff resources to all minority caucus members who serve on committee, there's no specific statutory requirement or otherwise to allocate a certain percentage of funds to any representative in either house. So I don't know other than a constitutional or statutory violation. What if they hadn't cut your client off entirely, but they had given him access? You're saying it's not about how much each person gets, it's just whether they get access. So what if they had given him access to timelines for votes, but not to the database with the bill analyses? It's our position that that decision would still be administrative and not legislative. So if that were, those other resources were reduced as a result of, or in retaliation for constitutionally protected activity, we think that this court would be able to review those as well. You know, I can't get out of my head looking at this, whether it's bill analyses or timelines. It strikes me that the most common thing that political parties do, majority, minority, is they, when they are in control of a house or a legislature, they make life difficult for their opponents. They schedule hearings at times that are inconvenient, or maybe they don't share timelines. I'm not saying that's elevated, but I'm saying that that's reality. And so it's very hard for me to see why the resources that you're talking about and the choices of Senator Brady as to who gets the goodies and who doesn't, aren't almost the essence of legislative activity. It's bill analyses. It's how do you want to vote on this bill? That's how legislators, indeed, that's part of your theory. That's how legislators get their job done. And you're saying with this lone little L.A. that Senator McCann has, he doesn't have, putting to one side whatever volunteers could do for him and putting to one side whatever he can do with publicly available resources, that he can't legislate as well. But doesn't that show precisely why this is legislative, why it belongs inside the legislative immunity doctrine? A couple of points in response to that question. Again, regardless of whether Senator McCann is a member of the Republican Party or Conservative Party, he's still a member of the minority caucus. And I would add that Senator McCann was still a member of the Republican Party at the time of the deprivation. Now, with respect to the point of whether or not this is just political hardball or, by definition, legislative activity, it's not for two reasons. Number one, this goes beyond simply making life difficult. This impacts Senator McCann's ability to represent his constituents by not knowing when votes are taking place, by not knowing what's included in the bill, by having communications staff cut off so he can't... Which means that it would be your position that you would want a court to supervise the allocation of resources because any legislator could come who is a member of the minority caucus and say, hey, I'm not getting full access to everything and that's inhibiting my ability to represent my constituents, especially compared to these other members of my caucus who can do it better. When it's constitutionally motivated, yes. But I thought your claim... Well, just go ahead. And I'm just going to say, just as an example, I'm sure you know about all of these, but Illinois statute, this is from your brief at page 5, says during the period, this is 160-2A, during the period the General Assembly is in session, staff assistants, these are these people we're talking about, shall be assigned by the legislative leadership of the respective parties to perform research and render other assistance to the members of that party on such committees as may be designated. So this wouldn't be the first time we've encountered legislative language that isn't 100% consistent across the board. It does happen. But this is very much speaking of parties. Because Illinois is aware that on the whole and by and large in our system, things are organized on a two-party basis. And when Senator McCann decided he wanted to run as the conservative party, he may not have formally tendered a letter of resignation to the Republicans, but the Republicans thought they were being disloyal to Governor Rauner and they just said, you're not part of our club anymore. Isn't that very political? Isn't that kind of the whole way we run legislatures? At first glance, the language of the statute would indicate that it's with respect to parties. Because it uses the word party, yeah. Correct, but everything above that specific statute, the Senate rules, the Constitution, all refer to minority and majority caucus. Now, until Senator McCann announced that he was running or starting the conservative party and running for governor as the conservative party candidate, there were only the Democratic Party and Republican Party, which is perhaps why the statute speaks in those terms. But based on the... But we've actually upheld, this is in the voting rights context, the rules for getting on the ballot, if you're a libertarian or if you're a conservative, if you're a Green Party person, if you're whatever else you might be, are more onerous because there's a desire on the part of the state not to clutter up the ballot with a million people, although actually quite a few people on the gubernatorial ballot this time around. And again, with the statutory language the way it is, Senator McCann was a member of the Republican Party at the time of the deprivation. So even though the statute refers to party, he was still in Senator Brady's party at the time and would be statutorily entitled to... So you want us to supervise the party's determinations of what it takes to be in or out? Because Senator Brady thought not. Senator Brady thought that this announcement, I'm going to run in my own party, was tantamount to saying I'm out. Senator McCann disagrees with that. Okay, fine, they disagree. Are we the right body to mediate that disagreement? In this case, I think we are because of the constitutional implications and because Senator McCann was... So we're going to say who's a bonafide Republican? Is that what you're arguing? When the decision impacts a sitting senator's ability to represent his constituents, that this impacted his ability to... Why wouldn't that just be a quintessentially political question, recognizing that that doctrine is rarely used? That's not an issue that we're going to submit to a jury. The question here for legislative immunity purposes is whether the services that your client was cut off from receiving are quintessentially legislative services, the bill support and the access to schedules and that sort of thing. If those are quintessentially legislative functions, then the caucus leadership is entitled to legislative immunity for how it allocates those resources, including cutting off some of its members or those that it considers to be former members. Sure, and frankly, the decision to say he's not on the Republican Party anymore. That seems like a quintessentially legislative decision as well. It's political. In order to enjoy legislative immunity, his actions would have to be within the sphere of legitimate legislative activity, and those lines are drawn very specifically to include acts which are integral to the passage of legislation. Like studying the bill. Knowing what time the vote is. And while some of the activities may relate to or help the functioning of the legislative process, many of the staff resources that were cut off undisputedly do not. But counsel, ironically, you're saying that the reason why this was so detrimental to your client is that he couldn't discharge his function as a state legislature without access to the information, while you're simultaneously saying that this stuff wasn't legislative enough to qualify for legislative immunity. Senator McCann can still participate in the legislative process, the integral parts of the legislative process as defined by legislative immunity, but Senator Brady's actions inhibited his ability to do that in a way that affects his ability to represent his constituents. So I don't think we're asking him to have it both ways, that the lines in legislative immunity are drawn pretty clearly, and Senator Brady's actions were administrative. However, they do make it harder for Senator McCann to perform those integral legislative acts. Why don't you save a little bit for rebuttal and invite Mr. Bijot? How do you pronounce your last name? Bijot. Bijot. It's like the letter in Khrushchev, Bijot. Yeah, the middle gets a little hazy. Okay, so Mr. Bijot. May it please the Court, I represent Senator Brady. Legislative immunity is a foundational principle that protects legislative independence and preserves the separation of powers by shielding individual legislators and their aides from suit for their legislative acts. In this case, plaintiffs are challenging Senator Brady's discretionary decision as Minority Leader to distribute staff assistance among the Senators in his caucus pursuant to Illinois law. Legislative immunity bars those claims because Senator Brady performed a legislative act when he decided how to allocate this legislative resource among individual legislators. So let me ask you this. Actually, I just understood Mr. Paschus to say that he's not arguing constructive eviction from the State Senate. So that's helpful to know. But in today's world, is it really possible for somebody responsibly to function as a State Senator with one L.A.? Yes, Your Honor. The way that the Illinois system is set up is it provides really two types of assistance. One is the mandatory assistance that's available to every Senator. That's just one person that you get to hire. I'm assuming it's one person, two halftimes, whatever. Right, he has an office allowance of however many he wants to hire. 73,000 or whatever it was. Plus annual increases since 2002, I think. So I don't know what the exact number is. But each Senator has that. Each Senator has access to the Legislative Research Reference Bureau which provides help in drafting bills. And he also has publicly available resources. But then there's also the secondary amount of support that is left to the discretion of Senate leadership. And so what it does is it balances... Can I clarify one thing about this? It actually sounded very generous to the minority because it sounds like there's this appropriation of some $25 million. Is it $20 or $25? Maybe it's $20. And it gets divided in half first by General Assembly and then Senate and then it gets divided in half again, majority-minority. So the minority is actually on a per capita basis getting a little bit more. Yes, Your Honor. Right. But just because it becomes a little more difficult, perhaps, to have influence in the Senate or to get your particular bills passed doesn't mean that you've been expelled from the Senate. What Illinois does is that it creates those two tiers. Everybody gets this base amount which is enough for you to perform your Senatorial duties. And then these additional resources are left to the Senate leadership because that's essentially a tool that the minority leader can use to achieve his legislative objectives by maybe moving resources towards a Senator who is proposing bills that are more important to the caucus's objectives. And there's any variety of reasons why Senate leadership would choose to put resources in one area or another. Well, they might do that because they think a certain Senator is going to be facing a tough re-election campaign. They want to show how successful this person has been. Absolutely, Your Honor. There's a whole slew of reasons. Although for legislative immunity, we look at the nature of the Act. So regardless of what Senator Brady's specific reason for taking this action was, it's covered by the immunity either way. What do these bill analyses say? Are they just summaries? Or do they reveal strategy? How substantive are they? Well, Senator McCann stated in his affidavit that it does include some expert analysis by a member, by staff assistants that are specific to that caucus. It summarizes the bill. It lists the proponents and opponents of the different bills. I'm not sure if this was in his affidavit, but which lobbyists support it and which ones don't. It has a citizen impact statement, financial impact. It includes a lot of different information and some of which is necessarily going to be strategic. So for example, I think it was Chief Judge Wood's example where if you had a member of the Socialist Party in the minority caucus, the minority caucus might not want to give that information to somebody who does not share their legislative objectives. So it's different then. I guess what I'm getting at, and I'm just trying to imagine because I don't know, at the federal level the Congressional Research Service would provide expert analysis and that sort of thing that would be non-partisan. That would give economic analysis, impact, whatever. But you're saying this is not like that because this actually is done from the Republican Party's perspective and so reflects more strategic... Yes, as I understand it, this is a minority caucus specific resource that's being provided, I think the majority caucus provides. So their analysis would look different than the ones produced by the majority caucus and given to their members. Yes, I would think so. And there's a number of other resources. Senator McCann can still draft a bill. He introduced one in July. He has access to these general resources. But necessarily, because he could very well have a position or situation where two senators want help from the same staff assistant in drafting a bill and somebody has to decide who gets it and that's left to the Senate Minority Leader. And this is just all part of that greater political system where the Senate Minority Leader has the authority to use resources to achieve his particular objectives and organize different bills across different senators and legislators. So the statute doesn't in any way restrict the minority leader's discretion in doing that. It doesn't say you have to make it roughly the same per senator. He could give all of it to one senator and none to the rest if he wanted. Yes, I think so, Your Honor. It's a pretty wide discretion. And this court doesn't actually need to decide the specifics of whether Senator Brady, in this particular instance, exceeded his discretion under the statute because in deciding legislative immunity, as the Supreme Court said in 10, you look at whether the challenged action could fairly be deemed legislative. It would have to be obvious that the legislator exceeded his authority and usurped executive or judicial power. So here, there's no dispute that  in deciding how these resources are allocated. And if Senator McCann wanted to bring a challenge against Senator Brady, saying just that he violated state law independent of some sort of constitutional challenge, he could have, I think, brought a mandamus action in state court to get a state court resolution of this state law issue. Just stepping back from the merits for a minute, do we have a damages claim here as well as a claim for injunctive relief? No, it was just injunctive and declaratory relief. And do we have a mootness problem or a looming mootness problem? There is a looming mootness problem. This case will become moot in January because Senator McCann is not running for re-election and so then he won't be Senator anymore. What's the actual date? Is it like Congress? It's the second Monday in January, which is either the 12th or 14th, I believe. Is the legislature actually in session after the election? Yes, there are six legislative session dates scheduled for November. I think it's the veto session. There aren't any scheduled beyond that, although it's possible that there could be some scheduled in January. But then that's somewhat relevant to the extent that Senator McCann is arguing that there's this difference between in session and out of session. Presumably, they won't be in session anymore after November 12th or whatever it is, in which case, even Senate... But it's a moot then? When there are no resources to allocate? Well, there would still be resources to allocate because the staff assistants still do work when the legislature is not in session. And there, I think, even Senator McCann agrees that Senator Brady has unlimited discretion under... For the non-session days. Right, for the non-session days. It's a different part of the statute. Right, it's subsection B, I think. And turning to the legislative versus administrative, this is a legislative act because the services that these staff assistants provide is very integral to the legislative process. It's bill writing and so forth and so on. And I just want to draw a distinction to sort of, I think, what would be the more prototypical administrative case, which would be an employment decision. If Senator Brady was making hiring or firing decision as to an individual staff assistant, that I don't think would be protected by legislative immunity. But when he's... resources go to which senator, that's something that falls within legislative immunity. And I do want to make sure that I point out that even if this court were to disagree on legislative immunity, there's still an independently sufficient reason to affirm on the basis that plaintiffs just haven't stated a claim on which relief could be granted. Almost every court by this point, or not almost every court, but every court who's looked at the issue has said that one elected official can't bring a retaliation claim against another elected official. You're thinking of the Garcetti line of cases here? Well, there's I think it's Blair's, the Ninth Circuit case, there's a Second Circuit case, Camacho, the First Circuit case, I don't remember. Right, that's at the Supreme Court level. Right, yeah, I don't think this specific issue has gotten to the Supreme Court level, although the Camacho... But the notion of whether there are ascertainable standards for that sort of thing is all over the Garcetti against the Bowles line of cases. Right, yes, Your Honor. So, and we have the Third Circuit's decision, Youngblood, nobody said anything about that. The district court thought that provided useful guidance. Well, it does provide useful guidance, Your Honor, because what it really gets to is that, what the court said there is that when you are talking about the internal workings of the Senate and the allocation of internal resources among the different Senators, the purposes of the immunity become very clear there because you have the separation of powers issues, because otherwise you would have the judiciary getting embroiled in all these internal disputes about whether one resource is getting allocated to one Senator or another and it's just inconsistent with the immunity for the judiciary to get involved in sort of those decisions. And especially where here Senator Brady is acting pursuant to his function within the system which is to apply these different resources wherever he thinks it's best for the caucus, that kind of oversight is just inconsistent with the purposes of the immunity. And I guess unless Your Honors have any further questions, I would ask that you affirm the district court. All right, I see none, so thank you very much. And I think you have about a minute, Mr. Pastor. Thank you, Your Honors. Just two quick points on rebuttal. First, I do want to clarify that we are arguing that this is a constructive eviction. Oh, you are? I misunderstood you then. The case that we cited in our brief, Amand B. McGann, district court in New Jersey, that Senator was expelled from the caucus, was still permitted to vote, but the court found that there was a constitutional violation because the exclusion would vastly diminish her effectiveness as a representative. The same is true for Senator McGann. And second, you brought up Youngblood and just want to clarify that we also said in our brief Manzi v. DiCarlo, and that was a Eastern District of New York case that is similar to Youngblood with the exception that in Youngblood it was an extension of the budgetary appropriations process, which is why the court found it to be within the legislative sphere. And in Manzi, it was shifting around actual resources, which is more similar to the facts in this case. And in that case, the court found that it was an administrative, not legislative, decision. Thank you very much. Thanks to both counsel. We'll take the case under advisement.